**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **HEATHER GRAHAM**, On Behalf of Herself and All Others Similarly Situated, | ) ) ) ) | JURY TRIAL DEMANDED |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case no.: |
| **GMET COMMUNICATIONS, LLC,** | ) ) ) | |
| Defendant. | ) | |

## FLSA COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff Heather Graham, on behalf of herself and all others similarly situated, by and through counsel, for her Complaint against Defendant GMET Communications, LLC ("GMET" or "Defendant") states as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Heather Graham is a former hourly Sales Advocate, Assistant Store Manager, and Store Manager for GMET. She sold cell phones, cell plans, and cell phone accessories to individual consumers. GMET treated her, and other Sales Advocate and Store Manager employees as non-exempt, hourly employees, but did not pay them minimum wage and/or overtime for all hours worked over 40 per week. GMET also illegally failed to pay commissions, bonuses, spiffs, and other such compensation legally due Plaintiff and other employees by, including but not limited to, retroactively changing the commission plans after employees performed work and earned commissions under the plans. Finally, GMET also illegally deducted work time from its employees' time records for interrupted meal periods which the employees worked through and illegally

1

rounded employees' work time to their detriment.

2.  GMET is one of the largest authorized Cricket Wireless retailers in the US with over 200 stores.  GMET had offices states throughout the United States, including Indiana, Iowa, Ohio, Michigan, and Texas.

3.  This is a collective action brought by Individual and Representative Plaintiff Heather Graham on her own behalf and on behalf of the proposed collective. Plaintiff and the putative collective members are or were employed by GMET as "Sales Advocates," and in similar job titles, and were denied minimum wage and/or overtime compensation as required by federal wage and hour laws. These employees are similarly situated under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) (the "Sales Advocate FLSA Collective").

4.  The Sales Advocate FLSA Collective is made up of all persons who are, have been, or will be employed by Defendant as "Sales Advocates," or similar job titles (collectively as "Sales Advocates"), within the United States at any time within the last three years through the date of final disposition of this action (the "FLSA Collective Period").

5.  Similarly, Plaintiff brings individual and representative FLSA claims on her own behalf and behalf of all persons who are, have been, or will be employed by Defendant as "Store Managers," "Assistant Store Managers," or similar job titles (collectively as "Store Managers"), within the United States at any time within the last three years through the date of final disposition of this action (the "Store Manager FLSA Collective").

6.  During the FLSA Collective Period, Defendant failed to pay minimum wage and/or overtime compensation to each member of the Sales Advocate and Store Manager FLSA Collectives as required by federal and state law. Plaintiff seeks relief for the FLSA Sales

Advocate and Sales Manager FLSA Collective to remedy Defendant's failure to pay all wages due, pay appropriate minimum wage and/or overtime compensation, and maintain and distribute accurate time records, in addition to injunctive relief.

7.    GMET's policy and practice is to deny earned wages including minimum wage and/or overtime pay to its Sales Advocates and Store Managers. In particular, GMET requires these employees to perform work including straight time hours and hours in excess of forty (40) hours per week, but fails to pay them minimum wages and/or overtime for all hours worked.

8.    GMET also paid commissions, bonuses, spiffs, and other such compensation, but GMET refused to include this compensation in Sales Advocates' and Store Managers' regular rate of pay for overtime calculation purposes.

9.    Plaintiff likewise brings Rule 23 class action claims on behalf of Sales Advocates and Store Managers who GMET has employed in the last three years under the Michigan Improved Workforce Opportunity Wage Act, MCLS § 408.931 et seq, ("MIWOWA") for GMET's failure to pay all wages due including minimum wage, straight time, and overtime premiums.

10.   Finally, Plaintiff brings a Rule 23 class action claim on behalf of hourly employees who participated in GMET's commission and/or bonus plans for breach of contract because GMET routinely changed the payout of those plans after the employees had performed work under those plans but before payout.  GMET thus breached those plans.

11.   GMET's deliberate illegal treatment of its Sales Advocates and Store Managers which denies them minimum wage and/or overtime compensation, and other wages due results in GMET violating the FLSA, Michigan state law, and other state wage and hour laws.

12.     Plaintiff will add other Rule 23 state wage and hour claims under state wage and hour laws as this case progresses.

## PARTIES

13.     Plaintiff Graham currently resides in Mount Clemens, Michigan. GMET employed Plaintiff Graham as a Sales Advocate, an Assistant Store Manager, and then a Store Manager from approximately April 4, 2024 through May 2, 2025, at Defendant's store located in Mount Clemons, Michigan.  Plaintiff's consent to become a Party Plaintiff pursuant to 29 U.S.C. § 226(b) is attached as an exhibit.

14.     Defendant GMET Communications, LLC is a Texas limited liability company with its principal office located Carrollton, Texas. GMET conducts business in this judicial district, and nationwide through the internet and other media.

## JURISDICTION AND VENUE

15.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* This Court has supplemental jurisdiction for all state law claims under 28 U.S.C. § 1367.

16.     The United States District Court for the Eastern District of Texas has personal jurisdiction because GMET conducts business within this District.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendant has offices, conducts business, and can be found in the Eastern District of Texas, and the causes of action set forth herein have arisen and occurred in part in the Eastern District of Texas. Venue is also proper under 29 U.S.C. §1132(e)(2) because Defendant has substantial business contacts within the state of Texas.

## FACTUAL ALLEGATIONS

18.    Defendant GMET "is a Cricket Wireless Authorized Retailer. With over 200 stores and over 800 employees, we are one of Crickets largest authorized retailers, providing value in wireless services to our customers."  See https://www.linkedin.com/company/gmet-communications-llc/about/.

19.    At all relevant times, Defendant has been an "employer" engaged in the interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

20.    At all relevant times, Defendant has employed, and/or continues to employ, "employee[s]," including Plaintiff and all similarly situated employees. At all relevant times, Defendant has had gross operating revenues in excess of $500,000.00 which is the threshold test for the "enterprise" requirement under the FLSA.

21.    Defendant classifies Plaintiff, and other Sales Advocates and Store Managers as non-exempt employees entitled to minimum wage and overtime compensation.

### Regular Rate Violations

22.    Defendant paid Plaintiff and other Sales Advocates an hourly wage plus bonuses, commissions, spiffs, and other such additional compensation.

23.    Defendant, however, did not include such bonuses, commissions, spiffs, and other such additional compensation it paid Sales Advocates into their regular rate of pay for any overtime compensation Defendant actually paid Plaintiff and/or the other Sales Advocates.

24.    Defendant uniformly applied its payment structure to all Sales Advocates.

25.    Similarly, Defendant paid Plaintiff and other Store Managers an hourly wage plus

bonuses, commissions, spiffs, and other such additional compensation.

26.    Defendant, however, did not include such bonuses, commissions, spiffs, and other such additional compensation Defendant paid Store Managers into their regular rate of pay for any overtime compensation Defendant actually paid Plaintiff and/or the other Store Managers.

27.    Defendant uniformly applied its payment structure to all Store Managers.

28.    Defendant's illegal failure to include such additional compensation into Sales Advocates' and Sales Managers' regular rates of pay for overtime calculation purposes violates the FLSA, MIWOWA, and other state wage laws.

29.    For example, on September 26, 2024, Plaintiff's GMET paycheck stub shows that she received a "Bonus" of $527.30.  GMET, however, failed to include this bonus into Plaintiff's regular rate of pay for overtime calculation purposes.

30.    Another example is on February 27, 2025, Plaintiff's GMET paycheck stub shows that she received a "Bonus" of $80.00.  GMET also failed to include this bonus into Plaintiff's regular rate of pay for overtime calculation purposes.

<u>Off The Clock Violations</u>

31.    Defendant suffered and permitted Plaintiff and other Sales Advocates and Store Managers to work hours without payment including hours which exceeded forty hours per week without overtime compensation.

32.    Defendant failed to pay Sales Advocates and Store Managers for all hours worked in that Defendant automatically deducted thirty minutes from these employees' timekeeping records even though they routinely worked through this "meal period" time which was not uninterrupted.  Defendant also knew that Sales Advocates and Store Managers

routinely performed work off the clock.  Finally, Defendant illegally rounded the work time of Sales Advocates and Store Managers to their detriment.

33.     For example, Plaintiff and other Sales Advocates and Store Managers regularly worked at least five days a week, and could work six days or more per week. They usually began work in the early morning. In addition, Plaintiff and other Sales Advocates regularly worked into the evenings and on the weekends, causing their hours worked to exceed forty in a week on a regular basis.

34.     For example, Plaintiff's schedule fluctuated from day-to-day while a Sales Advocate and Stoer Manager.  However, her regular Store Manager schedule had her working five to six days per week, during which she had to be available from approximately 9:00 am until 8:00 pm.  Additionally, Plaintiff worked seven days per week at different times. Plaintiff also performed additional hours of work each week using her mobile device to send and receive business-related emails, texts, and/or phone calls while she was not clocked into Defendant's timekeeping system.

35.     As further example, for the week beginning April 13, 2025, Plaintiff worked approximately 7-10 off the clock hours that week as a Store Manager for Defendant. Defendant, however, failed to pay her overtime compensation for her approximately 7-10 additional hours of overtime work for that week.

36.     Defendant knew Plaintiff and other Sales Advocates and Store Managers worked more than forty hours in a week because Defendant expected Plaintiff and other Sales Advocates and Store Managers to be available to receive phone calls and answer emails – from customers and from Defendant's employees and customers – in the evenings and on weekends while not clocked into Defendant's timekeeping system.

37. In addition, Defendant's management employees witnessed Plaintiff and other Sales Advocates performing overtime work for which Defendant did not pay them because Defendant's management employees saw Plaintiff and other Sales Advocates and Store Managers in the office outside of normal working hours, and contacted them via email and telephone outside of normal working hours.

38. Defendant uniformly denied Plaintiff and other Sales Advocates and Store Managers all straight time and overtime pay to which they were entitled.

39. Defendant is in the business of selling cell phones and cell phone service wireless plans.

40. Plaintiff and the other Sales Advocates had the same primary duty of selling Defendant's cell phones and cell service to individual consumers.

41. All Sales Advocates and Store Managers are similarly situated to each in that they share common job duties and descriptions, GMET treated them as non-exempt employees at all relevant times, they were all subject to GMET's policy and practice that failed to include additional compensation such as bonuses, commissions, and spiffs into the regular rate of pay for overtime calculation purposes, and they all performed work without payment for all minimum wage and/or overtime compensation.

42. Defendant did not keep accurate records of the hours Plaintiff and other Sales Advocates and Store Managers worked. Because Defendant did not pay Plaintiff and other Sales Advocates and Store Managers for all the hours they worked including overtime hours, Defendant's wage statements did not accurately reflect all hours Plaintiff and other Sales Advocates and Store Managers worked.  See 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c) (requiring employers to maintain payroll records for three years and time sheets for two years, including the exact number of hours worked each day and

each week).

43. Thus, Defendant also did not provide Plaintiff and the other Sales Advocates and Store Managers with accurate paychecks.

44. Defendant did not pay Plaintiff and other Sales Advocates and Store Managers for all of their overtime hours. Accordingly, Defendant did not provide Plaintiff and other Sales Advocates and Store Managers with all compensation owed to them, including their unpaid minimum wage and/or overtime, at the time they separated from the company.

45. Defendant is aware of wage and hour laws, as evidenced by the fact that they provide minimum wage and overtime compensation to other employees who are not Sales Advocates and Store Managers.

46. Defendant also breached contracts with its hourly employees who participated in Defendant's bonus and/or commission plans by changing the payment terms of those plans after the employees had performed under the plans.

47. For example, Defendant issued a commission and bonus plan for March 2025, and then breached that plan by failing to pay out in accordance with the plans' terms.

48. Defendant's conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiff and other Sales Advocates.

<u>Sales Advocate FLSA Collective</u>

49. Plaintiff brings Count I on behalf of herself and other similarly situated employees as authorized under the FLSA, 29 U.S.C. § 216(b). The similarly situated employees are:

   All persons who are, have been, or will be employed by Defendant as "Sales Advocates" and other individuals with similar job titles within the United States as hourly, non-exempt employees at any time during the last three years through the entry of judgment in this case ("Sales Advocate FLSA Collective").

50. Upon information and belief, Defendant paid Plaintiff and the Sales Advocate FLSA

Collective on a non-exempt hourly basis, and suffered and permitted them to work straight time and more than forty hours per week without payment of minimum wage and/or overtime compensation for all hours worked including those over forty per week.

51.     Further, Defendant paid Plaintiff and the Sales Advocate FLSA Collective bonuses, commissions, spiffs, and other such additional compensation.  Defendant, however, refused to include this additional compensation in the regular rate of pay for overtime calculation purposes.  As such, Defendant underpaid Plaintiff and the Sales Advocate FLSA Collective for any overtime compensation Defendant actually paid them.

52.     Defendant's requirement that Plaintiff and the Sales Advocate FLSA Collective work off of the clock and failure to pay for all work hours including hours over 40 per week is a uniform policy, decision, and/or plan that applies to all Sales Advocates.

53.     Further, Defendant's failure to include the bonuses, commissions, spiffs, and other such additional compensation Defendant paid Plaintiff and the Sales Advocate FLSA Collective into their regular rates of pay for overtime calculations purposes is a uniform policy, decision, or plan that applies to all Sales Advocates.

54.     Accordingly, Plaintiff and the Sales Advocate FLSA Collective were subject to Defendant's policy, decision, and/or plan of failing to pay appropriate minimum wage and/or overtime compensation.

55.     Defendant' unlawful FLSA conduct has been widespread, repeated. and consistent.

56.     Upon information and belief, Defendant knew that Plaintiff and the Sales Advocate FLSA Collective performed work that required minimum wage and/or overtime pay. Defendant required them to work long hours and weekends without the proper pay, Plaintiff and/or those similarly situated complained to Defendant about these practices,

and it is common industry knowledge that Sales Advocates are non-exempt employees who must be paid for all hours worked. Defendant operated under a scheme to deprive these employees of minimum wage and/or overtime compensation by failing to properly compensate them for all hours worked.

<u>Store Manager FLSA Collective</u>

57.  Plaintiff brings Count II on behalf of herself and other similarly situated employees as authorized under the FLSA, 29 U.S.C. § 216(b). The similarly situated employees are:

> All persons who are, have been, or will be employed by Defendant as "Store Managers," "Assistant Store Managers," and other individuals with similar job titles within the United States as hourly, non-exempt employees at any time during the last three years through the entry of judgment in this case ("Sales Advocate FLSA Collective").

58.  Upon information and belief, Defendant paid Plaintiff and the Store Manager FLSA Collective on a non-exempt hourly basis, and suffered and permitted them to work more than forty hours per week without payment of minimum wage and/or overtime compensation for all hours worked including those hours over forty per week.

59.  Further, Defendant paid Plaintiff and the Store Manager FLSA Collective bonuses, commissions, spiffs, and other such additional compensation.  Defendant, however, refused to include this additional compensation in the regular rate of pay for overtime calculation purposes.  As such, Defendant underpaid Plaintiff and the Store Manager FLSA Collective for any overtime compensation Defendant actually paid them.

60.  Defendant's requirement that Plaintiff and the Store Manager FLSA Collective work off of the clock and failure to pay for all work hours including hours over 40 per week is a uniform policy, decision, and/or plan that applies to all Store Managers.

61.  Further, Defendant's failure to include the bonuses, commissions, spiffs, and other such

additional compensation Defendant paid Plaintiff and the Store Manager FLSA Collective into their regular rates of pay for overtime calculations purposes is a uniform policy, decision, or plan that applies to all Store Managers.

62.     Accordingly, Plaintiff and the Store Manager FLSA Collective were subject to Defendant's policy, decision, and/or plan of failing to pay appropriate minimum wage and/or overtime compensation.

63.     Upon information and belief, Defendant knew that Plaintiff, and the Store Manager FLSA Collective performed work that required minimum wage and/or overtime pay. Defendant required them to work long hours and weekends without the proper pay, Plaintiff and/or those similarly situated complained to Defendant about these practices, and it is common industry knowledge that Store Managers are non-exempt employees who must be paid for all hours worked. Defendant operated under a scheme to deprive these employees of minimum wage and/or overtime compensation by failing to properly compensate them for all hours worked.

64.     Defendant's conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiff, and the Sales Advocate and Store Manager FLSA Collectives.

65.     Defendant is liable under the FLSA for failing to properly compensate Plaintiff, and the Sales Advocate and Store Manager FLSA Collectives, and as such, notice should be sent to the FLSA Collectives. There are numerous similarly situated, current and former employees of Defendant who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join. Those similarly situated employees are known to Defendant

and are readily identifiable through Defendant's records.

Michigan Sales Advocate Class

66.    Plaintiff brings Count III on behalf of herself and as a Rule 23 class action on behalf of the following class:

>    All persons who are, have been, or will be employed by Defendant as "Sales Advocates" and other individuals with similar job titles within Michigan as hourly, non-exempt employees at any time during the last three years through the entry of judgment in this case ("Michigan Sales Advocate Class").

67.    The Michigan Sales Advocate Class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number would be based are within the sole custody and/or control of Defendant, upon information and belief, Defendant has employed more than one hundred fifty (150) class members in Michigan during the Class Period.

68.    Among the proposed class, common questions of law and fact exist as to all Michigan Sales Advocate Class Members and predominate over any questions that affect only individual Michigan Sales Advocate Class Members. Those common questions include, but are not limited to:

a.    Whether Defendant paid Michigan Sales Advocate Class Members at least the minimum wage under Michigan law for all hours worked;

b.    Whether Defendant paid Michigan Sales Advocate Class Members an overtime premium for all overtime hours worked; and

c.    Whether Defendant included commissions, bonuses, spiffs, and other such compensation into Michigan Sales Advocate Class Members' regular rates of pay for overtime calculation purposes.

69.    Plaintiff's claims are typical of those belonging to members of the Michigan Sales Advocate Class in that: (1) Plaintiff is a member of the Michigan Sales Advocate Class; (2) Plaintiff's claims arise from the same practice or course of conduct that forms the

basis of the Michigan Sales Advocate Class claims; (3) Plaintiff's claims are based upon the same legal and remedial theories as those of the Michigan Sales Advocate Class and involve similar factual circumstances; (4) there is no antagonism between the interests of Plaintiff and absent Michigan Sales Advocate Class Members; and (5) the injuries that Plaintiff suffered are similar to the injuries that Michigan Sales Advocate Class Members suffered.

70.    Plaintiff will fairly and adequately represent the Michigan Sales Advocate Class. There is no conflict between Plaintiff's claims and those of other Michigan Sales Advocate Class Members. Plaintiff has retained counsel who are skilled and experienced in class actions and who will vigorously prosecute this litigation.

71.    The Michigan Sales Advocate Class is readily ascertainable from Defendant's own records.

72.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable. Furthermore, the damages suffered by individual Michigan Sales Advocate Class Members may be relatively small, and the expense and burden make it impracticable for Michigan Sales Advocate Class Members to individually seek redress.

73.    Plaintiff knows of no difficulty that might be encountered in the management of this litigation that would preclude its maintenance as a class action.

<u>Michigan Store Manager Class</u>

74.    Plaintiff brings Count IV on behalf of herself and as a Rule 23 class action on behalf of the following class:

All persons who are, have been, or will be employed by Defendant as "Store Managers," "Assistant Store Managers," and other individuals with similar

job titles within Michigan as hourly, non-exempt employees at any time during the last three years through the entry of judgment in this case ("Michigan Sales Advocate Class").

75.  The Michigan Store Manager Class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number would be based are within the sole custody and/or control of Defendant, upon information and belief, Defendant has employed more than seventy-five (75) class members in Michigan during the Class Period.

76.  Among the proposed class, common questions of law and fact exist as to all Michigan Store Manager Class Members and predominate over any questions that affect only individual Michigan Store Manager Class Members. Those common questions include, but are not limited to:

    a.  Whether Defendant paid Michigan Store Manager Class Members at least the minimum wage under Michigan law for all hours worked;

    b.  Whether Defendant paid Michigan Store Manager Class Members an overtime premium for all overtime hours worked; and

    c.  Whether Defendant included commissions, bonuses, spiffs, and other such compensation into Michigan Store Manager Class Members' regular rates of pay for overtime calculation purposes.

77.  Plaintiff's claims are typical of those belonging to members of the Michigan Store Manager Class in that: (1) Plaintiff is a member of the Michigan Store Manager Class; (2) Plaintiff's claims arise from the same practice or course of conduct that forms the basis of the Michigan Store Manager Class claims; (3) Plaintiff's claims are based upon the same legal and remedial theories as those of the Michigan Store Manager Class and involve similar factual circumstances; (4) there is no antagonism between the interests of Plaintiff and absent Michigan Store Manager Class Members; and (5) the injuries that

Plaintiff suffered are similar to the injuries that Michigan Store Manager Class Members suffered.

78.    Plaintiff will fairly and adequately represent the Michigan Store Manager Class. There is no conflict between Plaintiff's claims and those of other Michigan Store Manager Class Members. Plaintiff has retained counsel who are skilled and experienced in class actions and who will vigorously prosecute this litigation.

79.    The Michigan Store Manager Class is readily ascertainable from Defendant's own records.

80.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable. Furthermore, the damages suffered by individual Michigan Store Manager Class Members may be relatively small and the expense and burden make it impracticable for Michigan Store Manager Class Members to individually seek redress.

81.    Plaintiff knows of no difficulty that might be encountered in the management of this litigation that would preclude its maintenance as a class action.

<u>Michigan Hourly Employee Class</u>

82.    Plaintiff brings Count V on behalf of herself and as a Rule 23 class action on behalf of the following class:

> All persons who are, have been, or will be employed by Defendant as hourly,
> non-exempt employees and who participated in Defendant's commission
> and/or bonus plans within Michigan at any time during the last six years
> through the entry of judgment in this case ("Michigan Hourly Employee Class").

83.    The Michigan Hourly Employee Class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number would be based are within the sole custody

and/or control of Defendant, upon information and belief, Defendant has employed more than two hundred seventy-five (275) class members in Michigan during the Class Period.

84.    Among the proposed class, common questions of law and fact exist as to all Michigan Hourly Employee Class Members and predominate over any questions that affect only individual Michigan Hourly Employee Class Members. Those common questions include, but are not limited to:

   a.   Whether Defendant and the Michigan Hourly Employee Class Members entered into contract(s) for the payment of commissions, bonuses, spiffs, and other like compensation;

   b.   Whether the Michigan Hourly Employee Class Members performed under the contracts terms;

   c.   Whether Defendant breached the contract(s) with the Michigan Hourly Employee Class Members; and

   d.   Whether the Michigan Hourly Employee Class Members suffered damages from Defendant's contract breach(es).

85.    Plaintiff's claims are typical of those belonging to members of the Michigan Hourly Employee Class in that: (1) Plaintiff is a member of the Michigan Hourly Employee Class; (2) Plaintiff's claims arise from the same practice or course of conduct that forms the basis of the Michigan Hourly Employee Class claims; (3) Plaintiff's claims are based upon the same legal and remedial theories as those of the Michigan Hourly Employee Class and involve similar factual circumstances; (4) there is no antagonism between the interests of Plaintiff and absent Michigan Hourly Employee Class Members; and (5) the injuries that Plaintiff suffered are similar to the injuries that Michigan Hourly Employee Class Members suffered.

86.    Plaintiff will fairly and adequately represent the Michigan Hourly Employee Class. There is no conflict between Plaintiff's claims and those of other Michigan Hourly

Employee Class Members. Plaintiff has retained counsel who are skilled and experienced in class actions and who will vigorously prosecute this litigation.

87.    The Michigan Hourly Employee Class is readily ascertainable from Defendant's own records.

88.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable. Furthermore, the damages suffered by individual Michigan Hourly Employee Class Members may be relatively small and the expense and burden make it impracticable for Michigan Hourly Employee Class Members to individually seek redress.

89.    Plaintiff knows of no difficulty that might be encountered in the management of this litigation that would preclude its maintenance as a class action.

90.    Defendant' unlawful FLSA conduct and state law violations have been widespread, repeated. and consistent.

### <u>COUNT I</u>
**Sales Advocate Collective Action under §216(b) of the FAIR
LABOR STANDARDS ACT Minimum Wage and Overtime Claims**

91.    Plaintiff hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

92.    The FLSA requires each covered employer such as Defendant to compensate all non-exempt employees at a rate of not less than the applicable minimum wage for all hour worked.

93.    The FLSA requires each covered employer such as Defendant to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per work week.

94. When overtime pay is required under the FLSA, the "regular rate of pay" under 29 U.S.C. § 207 may be set by state or local statute, such as a local minimum wage law. See 29 C.F.R. 778.5 ("Where a higher minimum wage than that set in the Fair Labor Standards Act is applicable to an employee by virtue of such other legislation, the regular rate of the employee, as the term is used in the Fair Labor Standards Act, cannot be lower than such applicable minimum, for the words 'regular rate at which he is employed' as used in section 7 [regarding overtime] must be construed to mean the regular rate at which he is lawfully employed.").

95. The FLSA requires each covered employer such as Defendant to include all compensation paid to employees such as bonuses, commissions, spiffs, and other such additional compensation into the employees' regular rate of pay unless that compensation is specifically excluded.  The FLSA does not exclude Defendant's bonuses, commissions, spiffs, and other such additional compensation payments.

96. Plaintiff and the Sales Advocate FLSA Collective are entitled to be paid minimum wage for all hours worked and overtime compensation for all hours worked over forty (40) per week.

97. Defendant, pursuant to its policies and practices, failed and refused to pay minimum wage and/or overtime premiums to Plaintiff and the Sales Advocate FLSA Collective for all of their hours worked and all hours worked over forty (40) per week.

98. Defendant violated the FLSA, 29 U.S.C. § 201 *et seq.* by failing to compensate Plaintiff and the Sales Advocate FLSA Collective for all minimum wage and/or overtime compensation, and by failing to include the bonuses, commissions, spiffs, and other additional compensation into Plaintiff's and the Sales Advocate FLSA Collective's

regular rate of pay.

99.    By failing to record, report, and/or preserve accurate records of hours worked by Plaintiff and the Sales Advocate FLSA Collective, Defendant failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practice of employment, in violation of the FLSA, 29 U.S.C. § 201 *et seq*.

100.    The foregoing conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

101.    Plaintiff, on behalf of herself and the Sales Advocate FLSA Collective, seeks damages in the amount of all respective minimum wage and/or unpaid overtime compensations at a rate of one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week, plus liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems just and proper.

102.    Plaintiff, on behalf of herself and the Sales Advocate FLSA Collective, seeks recovery of all attorneys' fees, costs, and expenses of this action, to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

<u>**COUNT II**</u>
**Store Manager Collective Action under §216(b) of the FAIR LABOR STANDARDS ACT**
**Minimum Wage and Overtime Claims**

103.    Plaintiff hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

104.    The FLSA requires each covered employer such as Defendant to compensate all non-exempt employees at a rate of not less than the applicable minimum wage for all hour

worked.

105.    The FLSA requires each covered employer such as Defendant to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per work week.

106.    When overtime pay is required under the FLSA, the "regular rate of pay" under 29 U.S.C. § 207 may be set by state or local statute, such as a local minimum wage law. See 29 C.F.R. 778.5 ("Where a higher minimum wage than that set in the Fair Labor Standards Act is applicable to an employee by virtue of such other legislation, the regular rate of the employee, as the term is used in the Fair Labor Standards Act, cannot be lower than such applicable minimum, for the words 'regular rate at which he is employed' as used in section 7 [regarding overtime] must be construed to mean the regular rate at which he is lawfully employed.").

107.    The FLSA requires each covered employer such as Defendant to include all compensation paid to employees such as bonuses, commissions, spiffs, and other such additional compensation into the employees' regular rate of pay unless that compensation is specifically excluded.  The FLSA does not exclude Defendant's bonuses, commissions, spiffs, and other such additional compensation payments.

108.    Plaintiff and the Store Manager FLSA Collective are entitled to be paid minimum wage for all hours worked and overtime compensation for all hours worked over forty (40) per week.

109.    Defendant, pursuant to its policies and practices, failed and refused to pay minimum wage and/or overtime premiums to Plaintiff and the Store Manager FLSA Collective for all of their hours worked and all hours worked over forty (40) per week.

110.    Defendant violated the FLSA, 29 U.S.C. § 201 et seq. by failing to compensate Plaintiff and the Store Manager FLSA Collective for all minimum wage and/or overtime compensation, and by failing to include the bonuses, commissions, spiffs, and other additional compensation into Plaintiff's and the Store Manager FLSA Collective's regular rate of pay.

111.    By failing to record, report, and/or preserve accurate records of hours worked by Plaintiff and the Store Manager FLSA Collective, Defendant failed to make, keep, and preserve records with respect to each of their employees sufficient to determine their wages, hours, and other conditions and practice of employment, in violation of the FLSA, 29 U.S.C. § 201 et seq.

112.    The foregoing conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

113.    Plaintiff, on behalf of herself and the Store Manager FLSA Collective, seeks damages in the amount of all respective minimum wage and/or unpaid overtime compensations at a rate of one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week, plus liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems just and proper.

114.    Plaintiff, on behalf of herself and the Store Manager FLSA Collective, seeks recovery of all attorneys' fees, costs, and expenses of this action, to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

## COUNT III
### Violations of the Michigan Improved Workforce Opportunity Wage Act
### (On Behalf of the Michigan Sales Advocate Class)

115.    Plaintiff hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

116.    The Michigan Improved Workforce Opportunity Wage Act, MCLS § 408.931 et seq, ("MIWOWA") requires that covered employees be compensated for all hours worked, at rates of at least Michigan's minimum wage, MCLS § 408.934(1).

117.    The MIWOWA also requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at 150% of the employee's regular rate of pay (which cannot be less than the state minimum wage) ("Overtime Rate"). See MCLS § 408.934a(1).

118.    Defendant is subject to the minimum wage and overtime requirements of the MIWOWA because Defendant is an employer under MCLS § 408.932(d).

119.    During all relevant times, Plaintiff and the Michigan Sales Advocate Class were covered employees entitled to the above-described MIWOWA protections. See MCLS § 408.932(c).

120.    Defendant failed to compensate Plaintiff and the Michigan Sales Advocate Class for all hours worked at least at the Michigan minimum wage, in violation of MCLS § 408.934(1).

121.    Defendant also failed to compensate Plaintiff and the Michigan Sales Associate Class at an Overtime Rate for hours worked in excess of forty (40) hours per week, in violation of MCLS § 408.934a(1).

122.    Pursuant MCLS § 408.939(1)(a), employers, such as Defendant, who fail to pay an

employee wages in conformance with the MIWOWA shall be liable to the employee for the wages or expenses not paid, interest, court costs and attorneys' fees incurred in recovering the unpaid wages.

## COUNT IV
### Violations of the Michigan Improved Workforce Opportunity Wage Act
### (On Behalf of the Michigan Store Manager Class)

123. Plaintiff hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

124. The MIWOWA requires that covered employees be compensated for all hours worked, at rates of at least Michigan's minimum wage, MCLS § 408.934(1).

125. The MIWOWA also requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at 150% of the employee's regular rate of pay (which cannot be less than the state minimum wage) ("Overtime Rate"). See MCLS § 408.934a(1).

126. Defendant is subject to the minimum wage and overtime requirements of the MIWOWA because Defendant is an employer under MCLS § 408.932(d).

127. During all relevant times, Plaintiff and the Michigan Store Manager Class were covered employees entitled to the above-described MIWOWA protections. See MCLS § 408.932(c).

128. Defendant failed to compensate Plaintiff and the Michigan Store Manager Class for all hours worked at least at the Michigan minimum wage, in violation of MCLS § 408.934(1).

129. Defendant also failed to compensate Plaintiff and the Michigan Store Manager Class at an Overtime Rate for hours worked in excess of forty (40) hours per week, in violation

of MCLS § 408.934a(1).

130.    Pursuant MCLS § 408.939(1)(a), employers, such as Defendant, who fail to pay an employee wages in conformance with the MIWOWA shall be liable to the employee for the wages or expenses not paid, interest, court costs and attorneys' fees incurred in recovering the unpaid wages.

### COUNT V
**Breach of Contract**
**(On Behalf of the Michigan Hourly Employee Class)**

131.    Plaintiff hereby incorporates by reference the foregoing paragraphs of this Complaint into this count.

132.    Defendant repeatedly entered into contracts with its hourly employees for the payment of commissions, bonuses, spiffs, and/or other such additional compensation.

133.    Defendant communicated and offered these contracts to the Michigan Hourly Employee Class, and the Class performed under the contracts.

134.    Defendant repeatedly breached these contracts with the Michigan Hourly Employee Class by failing to pay the Class pursuant to the contract terms.

135.    Defendant's repeated breaches of these contracts injured the Michigan Hourly Employee Class by amounts to be proven at trial.

**WHEREFORE,** Plaintiff, on behalf of herself and all members of the Sales Advocate and Store Manager FLSA Collectives, and the Sales Advocate, Store Manager, and Hourly Employee Rule 23 Classes, prays for relief as follows:

A. Designation of this action as a collective action on behalf of the Sales Advocate and Store Manager FLSA Collectives, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Collectives, apprising them of the pendency of

this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Join forms pursuant to 29 U.S.C. § 216(b);

B. Certification of the Sales Advocate, Store Manager, and Hourly Employee Classes as Rule 23 Class Actions;

C. A declaration that Defendant is financially responsible for notifying the FLSA Collectives and Rule 23 Classes of Defendant's alleged wage and hour, and state law violations;

D. Judgment against Defendant for an amount equal to Plaintiff and the FLSA Collectives' unpaid minimum and/or overtime wages at the applicable rates;

E. A finding that Defendant's conduct was willful;

F. An equal amount to the unpaid minimum and/or overtime wages as liquidated damages under the FLSA;

G. An amount equal to fifty percent (50%) of the unpaid minimum wage and/or overtime wages as required by MIWOWA;

H. All damages which resulted from Defendant's breaches of contracts;

I. All costs and attorney' fees incurred prosecuting these claims, including expert fees;

J. Pre-judgment and post-judgment interest, as provided by law; and

K. Such further relief as the Court deems just and equitable.

### Demand for Jury Trial

Plaintiff, individually and behalf of all others similarly situated, hereby demands a jury trial on all causes of action and claims with respect to which they have a right to jury trial pursuant to Federal Rule of Civil Procedure 38(b).

Dated:  June 3, 2025

Respectfully submitted,

/s/ Rowdy B. Meeks
Rowdy B. Meeks, Kansas Bar No.16068
**Rowdy Meeks Legal Group LLC**
8201 Mission Road, Suite 250
Prairie Village, Kansas 66206
Tel:  (913) 766-5585
Fax:  (816) 875-5069
Rowdy.Meeks@rmlegalgroup.com
www.rmlegalgroup.com

Attorneys for Plaintiffs